UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARK B. JACKSON, } | |
| Plaintiff, } | |
| v. } | Case No.: 2:19-cv-01940-RDP |
| BANK OF AMERICA, N.A. et al., } | |
| Defendants. } | |

## MEMORANDUM OPINION

This matter is before the court on Defendant Bank of America N.A.'s Motion for Summary Judgment. (Doc. # 55). The motion is fully briefed (Docs. # 55-1, 66, 71) and ripe for decision. For the reasons explained below, the court concludes that the Motion (Doc. # 55) is due to be granted.

**I.    Background**[1]

In 2015, Plaintiff Mark Jackson defaulted on two credit cards issued by Bank of America N.A. ("BANA"). (Doc. # 55-3 ¶ 7, 8). BANA subsequently filed suit against Jackson in the Circuit Court of Jefferson County, Alabama for the outstanding debts totaling approximately $60,000. (Doc. # 28 ¶ 11-15). During the course of that litigation, on February 19, 2018, Jackson's counsel provided BANA with a "best and final" settlement offer:

> Thanks for the demand. Here is what we can do – best and final:
> - Total Settlement: $15,000

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

- Payment 1 - $5,000 within 90 days along with standard settlement agreement and mutual release
- Payment 2 - $10,000 within 18 months. No monthly payments. No interest. No penalty for prepayment.
- Case dismissed with prejudice, costs taxed as paid.
- If you cannot delete the tradeline (I think you can), then allow us to dispute with an agreement that BOA will not respond to the dispute. That should result in deletion. It will not create a COA against BOA.

(Doc. # 65-1 at 2). Despite several attempts, the parties were unable to reach a final resolution. (Doc. # 28 ¶ 17-18). On October 26, 2018, the trial judge entered an order dismissing the case with prejudice and requiring the parties to abide by terms that largely -- but not precisely -- reflected Jackson's earlier settlement offer:

- Total Settlement: $15,000.
- Payment 1 - $5,000 within 90 days (i.e., by May 21, 2018), along with standard settlement agreement and mutual release.
- Payment 2 - $10,000 within 18 months. No monthly payments. No interest. No penalty for prepayment.
- Case dismissed with prejudice, costs taxed as paid. And,
- Plaintiff to either delete the tradeline(s) or allow Defendant to dispute the tradeline(s) with the agreement that Plaintiff will not respond to that (those) dispute(s).

(Doc. # 65-9).[2] In ordering "judgment" in the case, the trial court simply adopted the parties' proposed settlement terms and incorporated those terms in the order. Other than the provisions detailing the payment plan, the order contained no language specifying the order of performance or the effect of one party's failure to comply with the terms. The present case stems from the parties' differing interpretation of that order.

Between January and September 2019, BANA received eleven Automated Consumer Dispute Verification Forms ("ACDVs") from credit reporting agencies ("CRAs") disputing that the accounts belonged to Jackson. (Doc. # 55-3 at 316-57). In response, BANA verified Jackson's

---

[2] Jackson remitted the $5,000.00 payment prior to entry of the order, which BANA applied equally between the account balances. (Docs. # 65-10; # 55-3 ¶ 15).

identity and confirmed he owned the disputed accounts. (*Id.*). Jackson (through an agency called Lexington Law) also twice disputed the tradelines before his second payment was due, both of which BANA verified. (Doc. # 28 ¶ 30). Jackson contends that BANA's responses violate the order, thus excusing him from making the second payment. (Doc. # 28 ¶ 51-52).

At some point in June 2019, Jackson's counsel reported to BANA's counsel that Jackson was "in a position to make the second and final payment ($10,000) th[at] week." (Doc. # 65-11 at 6). While the parties discussed payment logistics, Jackson never remitted the final payment because, as he contends, BANA failed to comply with the order by failing to delete the tradelines and by responding to Jackson's disputes. (Doc. # 28 ¶ 54).

On October 4, 2019, BANA received notice that Jackson disputed the "current balance and/or amount past due" and requested that BANA verify the $31,754 current balance. (Docs. # 65-19 at 8; # 71-1 ¶ 5). BANA responded, "Disputed information accurate." (Doc. # 65-4 at 2). The CRA that received BANA's response sent the results of investigation to Jackson on October 8, 2019, stating that the reported balances of the accounts -- $31,754 and $29,726 -- had been "verified as accurate." (Doc. # 65-15 at 5).

In a reversal of roles, Jackson became the plaintiff in a lawsuit against BANA on September 3, 2019 in the Circuit Court of Jefferson County, Alabama (Case No.: CV-2019-903934.00), alleging that BANA violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and breached the order – the purported contract. (Doc. # 1-1). BANA removed the case to this court. (Doc. # 1). BANA now moves to dismiss all claims against it as set forth in Jackson's amended complaint. (Docs. # 55; # 28).

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson*, teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the

4

party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

The Eleventh Circuit has interpreted *Celotex* to require that, as to issues on which the nonmovant would bear the burden of proof at trial, a

> moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility. Instead, the moving party simply may show [ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the non-moving

5

> party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.

*Fitzpatrick*, 2 F.3d at 1115 (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)). And, where the moving party has met this initial burden by showing that there is an absence of evidence supporting the nonmoving party's case, the nonmoving party must

> respond in one of two ways. First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was "overlooked or ignored" by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence. Second, he or she may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

*Id.* (internal citations omitted).

### III.     Analysis

BANA moves to dismiss both Jackson's breach of contract claim (Count One) and his FCRA claim (Count Two). The court addresses each claim in reverse order.

#### A.     FCRA Claim

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 453 (11th Cir. 2019) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007)). In later amendments to the FCRA, Congress extended the Act to cover entities that supply consumer information to CRAs – so-called "furnishers." *Hunt*, 770 F. App'x at 453. The FCRA imposes two obligations on furnishers. *Id.* First, under § 1681s-2(a), furnishers are prohibited from "furnish[ing] any information relating to a consumer to any [CRA] if the person knows or has reasonable cause to believe that the information is <u>inaccurate</u>." 15 U.S.C. § 1681s-2(a)(1)(A) (emphasis added). Second, under §

1681s-2(b), furnishers are required to take certain actions once notified by a CRA that a consumer disputes the accuracy or completeness of her furnished information. *Id*. at § 1681s-2(b).

Where, as here, a furnisher receives notice of a dispute regarding the completeness or accuracy of any information provided to a CRA, the FCRA requires the furnisher to (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided by the CRA; and (3) report the results of the investigation to the CRA. *Id.* Additional requirements are imposed if after investigation it is determined that the information is incomplete or inaccurate. *Id.*

Jackson alleges that BANA, as a "furnisher" of information, violated the FCRA by failing to (1) properly investigate his disputes; (2) verify the accuracy of information provided; and (3) delete inaccurate account information. (Doc. # 28 ¶¶ 56-77, 88-99). While the alleged violations implicate several provisions of § 1681, each of those requires Jackson to present evidence tending to show that BANA provided inaccurate information to a credit reporting agency. 15 U.S.C. § 1681s-2(a)(1)(A).

In the FCRA context, a plaintiff must show a *factual* inaccuracy -- rather than the existence of a disputed legal question -- to prevail in a suit against a furnisher under § 1681s-2(b). *Hunt*, 770 F. App'x at 458. *See also Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018) ("[A] plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that had the furnisher conducted a reasonable investigation, the result would have been different; *i.e.*, that the furnisher would have discovered that the information it reported was inaccurate or incomplete . . ."). Central to the court's analysis here is "whether the alleged inaccuracy turns on *applying* law to the facts or simply *examining* the

facts alone." *Chuluunbat v. Experian Info. Sols., Inc.,* 4 F.4th 562, 568 (7th Cir. 2021) (emphasis in original).

Jackson primarily argues[3] that BANA provided factually inaccurate information when it reported balances totaling approximately $60,000, rather than the $15,000 balance purportedly required by the order. (Doc. # 66 at 23). BANA, on the other hand, argues that the balances accurately reflected what Jackson owed as BANA was not required to reduce the balance to $15,000 until Jackson paid the remaining $10,000 balance. (Docs. # 55-1 at 15; # 71 at 6). A resolution necessarily requires application of law in the absence of direction from the order. As this court noted in its earlier ruling dismissing FCRA claims against the CRAs, the time at which the parties' obligations became due is a legal question. (Doc. # 53 at 2). Did Jackson's approximately $60,000 balance reduce to $15,000 on the date of the order, or when Jackson remitted the two requisite payments? A similar inquiry applies to the time at which BANA was required to delete the tradelines or refrain from responding to disputes. Because Jackson merely asserts the existence of a legal dispute (rather than a factually inaccuracy), Jackson cannot prevail on a claim under § 1681s-2(b).

Jackson relies on *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 (11th Cir. 2021) for the proposition that interpreting legal documents (such as the order) does not always present a purely legal dispute. (Doc. # 66 at 24). While this may hold true in certain contexts, this is not one of them and *Losch* is distinguishable from the matter here.

---

[3] The court notes that Plaintiff submitted disputes targeting two types of information: (1) account ownership and (2) account balances. While Jackson clearly alleges that BANA violated the FCRA by providing inaccurate account balance information, it is not entirely clear whether Jackson alleges an FCRA violation occurred with respect to BANA's handling of the account ownership disputes. To the extent Jackson makes such a claim, it fails because Jackson admitted to opening the accounts. (Doc. # 55-4 at 39: 20-23; 40:1-17). BANA, therefore, did not provide inaccurate information to any CRA when it confirmed that Jackson owned the accounts. *Hunt*, 770 F. App'x at 458.

8

In *Losch*, the Eleventh Circuit considered whether a CRA defendant reported accurate information about a consumer-plaintiff's mortgage debt after the debt was discharged in bankruptcy. 995 F.3d at 944-45. To resolve that question, the court considered the effect of the discharge order. *Id.* The defendant argued that the discharge order did not remove the existence of any debt but, rather, was an injunction against certain means of enforcing a debt. *Id.* at 945. The court rejected that interpretation and agreed with the plaintiff that the order discharged the debt, thus rendering the information reported -- that the plaintiff had a certain balance, a certain amount of past due debt, and was late on payments -- inaccurate. *Id.* at 945. To be sure, in *Losch* the bankruptcy court's discharge lacked clarity in some areas. But, as the Eleventh Circuit explained, there was "no doubt" that the consumer's mortgage was discharged. *Losch*, 995 F.3d at 946.

The underlying order in the present case is less straightforward. The order imposed obligations on both parties with no clear order of performance.[4] For example, the order directed BANA to either delete the tradelines or not respond to a dispute. (Doc. # 66 at 25). What the order did not do, however, was clearly indicate at what time either of those obligations arose. Nor did the order make clear whether either party's performance would be excused if the other party failed to perform. The parties each have sophisticated counsel, yet they cannot come to a consensus as to the legal effect of the order. This tends to show that this same determination is outside the competency of BANA's investigating employees. Stated simply, the order is legally ambiguous and requires legal interpretation.

---

[4] The court lends little credence to BANA's argument that the order of bullet points somehow corresponds to the order of performance. There is simply no evidence suggesting that is what the state court judge intended. In the absence of express language and direction from the judge, the court declines to join BANA in a game of speculation. Moreover, the court must view the evidence in the light most favorable to Jackson. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

Furthermore, and in any event, even Jackson's interpretation of the order reveals that he was not entirely clear on what was ordered by the state court and when it was required. Jackson contends that "it is enough for BANA to simply do what the order plainly says." (Doc. # 66 at 27). By this same logic, Jackson should have made the requisite $10,000 payment as the order plainly required him to do. Jackson did not make this payment for the same reason that BANA did not delete the tradelines and continued responding to disputes – the other party had not performed. Whether Jackson was obligated to make the $10,000 payment before BANA performed is a currently unresolved legal question. *Hunt*, 770 F. App'x at 452 (making a similar finding with respect to whether the plaintiff was obligated to make payments on a mortgage after a Foreclosure Action was filed). Even if a subsequent proceeding found that BANA failed to accurately report the $15,000 balance, it cannot be said that BANA's purported legal error resulted in providing inaccurate information. Thus, Jackson's FCRA claim fails as a matter of law.[5]

**B.     Breach of Contract**

In order for Jackson to prevail on his breach of contract claim, a valid contract between Jackson and BANA must exist. *See Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105-06 (Ala. 2002) (requiring a plaintiff in a breach of contraction action to prove, among other things, the existence of a valid contract). Stated simply, the order is not a contract.

Jackson argues that the order constitutes a contract and that BANA's failure to either delete the tradelines or refrain from responding to Jackson's disputes constitutes a breach of that "agreement." To establish the existence of a valid contract, Jackson must establish "an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (internal quotations and citations

---

[5] Jackson could have petitioned the state court judge to clarify or even enforce the order. What Jackson cannot do, however, is place the burden of interpreting the legal effect of the order on BANA.

10

omitted).  Mutual assent requires "the minds of the parties [to] meet as to all the essential features of a contract." *Air Conditioning Eng'rs, Inc. v. Small*, 65 So. 2d 698, 703 (Ala. 1953). Mutual assent can be -- but need not be -- evidenced by signatures. *Martin & Cobey Const. Co.*, 58 So. 3d 723, 726 (Ala. 2010) (quoting *Ex parte Holland Mfg. Co.*, 689 So. 2d 65 (Ala. 1996) ("The purpose of a signature on a contract is to show mutual assent.").

Here, there is no evidence that Jackson offered and/or that and BANA accepted the essential terms that became the order. Indeed, the undisputed evidence reveals that the judge entered the order precisely because the parties could not agree to "all material terms, especially as the agreement related to the deletion of the BANA tradelines." (Doc. # 28 ¶¶ 18-19). Common sense dictates that an order unilaterally imposing obligations on litigants -- and signed only by the judge -- does not evidence a "meeting of the minds" between parties. *See I.C.E. Contractors, Inc. v. Martin & Cobey Const. Co.*, 58 So. 3d 723, 726 (Ala. 2010) (holding that Plaintiff failed to prove the existence of a valid contract where neither party signed the purported contract and offered no other evidence to suggest mutual assent). And, the dispute over the meaning of the order is further evidence that there was no "meeting of the minds." The order simply does not constitute a contract upon which Jackson can recover under a breach-of-contract theory.

**IV.     Conclusion**

For the reasons stated above, BANAs' Motion for Summary Judgment (Doc. # 55) is due to be granted.

A separate order in accordance with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this May 11, 2022.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE